# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 20-1571V**
UNPUBLISHED

JULIE CORNELL,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: July 13, 2026

*Leigh Finfer, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Ryan Nelson, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On November 12, 2020, Julie Cornell filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza ("flu") vaccine on October 17, 2019. Petition at 1 (ECF No. 1). The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons set forth below, and after holding a "Motions Day" hearing on entitlement and damages, I find that Petitioner is entitled to compensation, and I award

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

damages in the amount of **$108,000.00**, **representing reimbursement for her actual pain and suffering.**

## I. Relevant Procedural History

This case was activated from "pre-assignment review" on November 19, 2020. (ECF No. 8). Once Respondent had opportunity to review the record, he indicated that he was amenable to informal resolution and the parties discussed settlement for over one year. The staff attorney managing this case held a status conference with the parties on June 12, 2023, during which the parties relayed that settlement discussions had reached an impasse. Thereafter, Respondent filed his contesting Rule 4(c) Report on August 1, 2024. (ECF No. 30). Petitioner filed his Motion for Ruling on the Record on Entitlement and Damages on May 6, 2024. (ECF No. 37). Respondent filed his response brief on June 20, 2024. (ECF No. 38). Petitioner filed her reply on July 19, 2024. (ECF No. 39).

On May 5, 2026, I proposed this case for an expedited hearing on May 29, 2026, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. (ECF No. 40). The parties agreed, and the "Motions Day" hearing took place as scheduled. During the hearing, I orally ruled on Petitioner's entitlement to compensation and then made an oral damages determination as well. This Decision memorializes those findings and determinations.

## II. Factual Findings and Ruling on Entitlement

### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling."

*Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying "qualifications and aids to interpretation" ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

### B. Factual Finding Regarding QAI Criteria for Table SIRVA

Respondent contests only one of the four QAI criteria - whether the onset of Petitioner's pain occurred within 48 hours of vaccination. Response at 5. Specifically, he emphasizes that Petitioner did not report or seek treatment for her alleged left arm pain until November 22, 2019, 41 days post-vaccination, and that in an Employee Injury/Illness/SEP Report, Petitioner herself reported shoulder pain "after about 48 hours", which Respondent argues proves that the onset of pain was outside the defined period. *Id.* at 5-6.

Notwithstanding Respondent's objection, I find that the treatment delay in question is not facially unreasonable, especially in comparison to what has characterized the course of seeking treatment for many other successful claims. It is frequently observed that claimants expect any post-vaccination pain to be transient and/or not serious enough to merit evaluation by a medical professional. A 41 day delay is not long enough to create a genuine issue as to onset.

The record in which Petitioner represented that her left shoulder pain began "after about 48 hours" does possibly suggest a non-Table onset. Had there been another piece of evidence in the record which cut against onset in the same way that the Employee Injury Report did, it might have been enough to tip the scales on this issue to Respondent's side. However, no such record exists, and the ones that do either place onset within 48 hours or otherwise "after" the flu vaccination in more general terms. I also note that the inherent ambiguity in the phrase "about 48 hours" is not wholly inconsistent with an onset *within* that period. On the whole, the record is sufficient for me to find that Petitioner's left arm pain did begin by October 19, 2019, two days following her vaccination.

Otherwise, the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria. *See* 42 C.F.R. § 100.3(c)(10)(i) & (iii)-(iv). A thorough review of the record in this case does not reveal any history of pain or dysfunction in Petitioner's right shoulder prior to receiving the Tdap vaccine. The record also reflects that Petitioner's symptoms from her SIRVA were limited to her right shoulder. Finally, there is nothing in the record to suggest that any other condition or abnormality that would explain Petitioner's symptoms is present. Thus, and as I stated during the expedited hearing, all elements of a Table SIRVA claim have been preponderantly established.

### C. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of her injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The record is clear that on October 17, 2019, Petitioner received a covered flu vaccination in her left arm. Ex. 1 at 3. Regarding the other requirements, there is ample proof that Petitioner suffered the residual effects of her injury for more than six months, and there is no indication that she has received any other award or settlement as a result of this injury. Therefore, Petitioner has satisfied all of the requirements for compensation.

## III. Compensation to be Awarded

### A. Parties Arguments

Petitioner requests $108,000.00 for actual pain and suffering, maintaining that her treatment involved multiple doctor's appointments, one MRI, eight sessions of physical therapy, one steroid injections, and one surgical procedure, a subacromial decompression with debridement of the subscapularis, supraspinatus, and bicep tendons over the course of approximately 11 months. Mot. at 9-10. She favorably compares the facts and circumstances in her case to those experienced by the petitioners in *Weed* and *Guymon,* who received $105,000.00 and $110,000.00 respectively for their past pain and suffering.[4] *Id.* at 8-9.

In contrast, Respondent asserts that Petitioner should receive the lesser amount of $67,500.00. Response at 12. Respondent argues that the facts and circumstance more

[4] *Weed v. Sec'y of Health & Hum. Servs.*, No. 18-1473V, 2021 WL 1711800 (Fed. Cl. Spec. Mstr. Mar. 30, 2021); *Guymon v. Sec'y of Health & Hum. Servs.*, No. 19-1411V, 2022 WL 1447006 (Fed. Cl. Spec. Mstr. Mar. 25, 2022).

closely resemble the circumstances of the petitioners in *Horton, Berberich, Saha, and Hunt*, in which petitioners were awarded $60,000.00 except for the petitioner in *Hunt*, who was awarded $95,000.00.[5] *Id.* at 12-14.

### B. Legal Standards for Pain and Suffering Awards

In another decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Friberg v. Sec'y of Health & Hum. Servs.*, No. 19-1727V, 2022 WL 3152827 (Fed. Cl. Spec. Mstr. July 6, 2022).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[6]

### C. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, signed affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on March 27, 2026. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

---

[5] *Horton v. Sec'y of Health & Hum. Servs.*, No. 20-1166V, 2022 WL 1421847 (Fed. Cl. Spec. Mstr. Mar. 26, 2022); *Berberich v. Sec'y of Health & Hum. Servs.*, No. 20-10V, 2021 WL 4823551 (Fed. Cl. Spec. Mstr. Sept. 14, 2021); *Saha v. Sec'y of Health & Hum. Servs.*, No. 20-178V, 2021 WL 3028060 (Fed. Cl. Spec. Mstr. June 17, 2021); *Hunt v. Sec'y of Health & Hum. Servs.*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022).

[6] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Pursuant to my oral ruling on May 29, 2026 (which is fully adopted herein), **I find that $108,000.00 represents a fair and appropriate amount of compensation for Petitioner's pain and suffering.**

In making this determination, I have considered relevant facts such as the moderate course of Petitioner's injury, with her treatment course lasting for approximately 22 months. During this time, she reported pain levels ranging from 2-4/10 at rest which increased to 8-9/10 after extensive use or activity prior to her surgery. Following her surgery at her final PT session, she rated her pain as 1.5/10 and 2-4/10 at worst, and at a follow-up medical appointment she rated her current pain as 0/10 but 6/10 at worst. She also attended eight sessions of physical therapy post-surgery, had one steroid injection, which provided limited relief, and one MRI. Most importantly, she also underwent a surgical procedure, a subacromial decompression with debridement.

Petitioner's requested sum is bolstered by her strong use of comparable cases. The *Weed* petitioner treated her injury for 10 months, had one arthroscopic surgery followed by nine PT sessions, and reported similar pain levels to the instant case. *Weed*, 2021 WL 1711800 at *4. Ms. Weed was ultimately awarded $105,000.00 for her pain and suffering. *Id.* On balance, Ms. Cornell's injury is slightly more severe, with a one month longer treatment course and a steroid injection, although one fewer PT session.

Conversely, *Guymon* presents a slightly more severe injury than the one suffered by Ms. Cornell. The *Guymon* petitioner treated her injury for approximately 10 months, during which she had arthroscopic surgery, two injections, one MRI, and 15 sessions of PT, during which she experienced a setback. *Guymon*, 2022 WL 1447006 at *6. Ms. Guymon was awarded $110,000.00. *Id.* Compared to these two cases, I would expect a reasonable number to fall in-between their pain and suffering awards.

Respondent's cited cases of *Horton, Berberich, and Saha* are distinguishable as involving far less severe injuries than the instant case. Notably, *none* of those cases reflect instances in which treatment included surgical intervention (a factor I have often noted supports a six-figure pain and suffering award). Each of those petitioners was ultimately awarded $60,000.00 for their pain and suffering. And although the petitioner in *Hunt* was awarded less than $100,000.00 despite undergoing surgery, that case is distinguishable due to the prolonged pain relief that the petitioner was able to experience from steroid injections, and ultimately is an outlier for cases involving surgery.

Taking into account the record of Petitioner's SIRVA and the comparable cases cited by Petitioner and Respondent, as well as my experience in adjudicating similar cases, I find that $108,000.00 represents a reasonable amount of compensation for Petitioner's actual pain and suffering.

**Conclusion**

For all the reasons discussed above and based on consideration of the entire record, I find that Petitioner's right shoulder injury meets the definition for a Table SIRVA. Thus, causation is presumed, and Petitioner is entitled to compensation in this case. Furthermore, I find that $108,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[7]

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $108,000.00, representing reimbursement for actual pain and suffering, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[7] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.